UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MATTHEW L JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>DARR, Correctional Officer, Captain of the Prison,<br><br>Defendant. | Civil No. 10-cv-2334-WQH (POR)<br><br>**REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO DISMISS BE DENIED**<br><br>**[ECF NO. 7]** |
|---|---|

## I. INTRODUCTION

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to U.S.C. § 636(b)(1) and Local Civil Rule 72.3 of the United States District Court for the Southern District of California.

Plaintiff, an inmate currently incarcerated at the Correctional Training Facility in Soledad, California, is proceeding *pro se* and *in forma pauperis*, on a civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff alleges that, while he was incarcerated at Centinela State Prison ("CSP"), Defendant, a correctional officer at that facility, violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 2. Defendant allegedly ordered certain cells opened and allowed the inmates of those cells to physically injure Plaintiff. *Id.*

at C5.[1] Plaintiff seeks injunctive relief and compensatory and punitive damages. *Id.* at 7. Plaintiff also seeks immediate release from prison. *Id.*

On April 18, 2011, Defendant filed a Motion to Dismiss Plaintiff's Complaint, arguing Plaintiff failed to exhaust his administrative remedies and that his claim should be dismissed because it is time barred. (ECF No. 7.) On April 28, 2011, Plaintiff filed an Opposition to Defendant's Motion. (ECF No. 9.) Defendant filed a Reply on May 19, 2011. (ECF No. 10.)

Upon a thorough review of the parties' filings, and in accordance with Local Rule 72.1(d), it is hereby recommended that Defendant's Motion to Dismiss be **DENIED**.

## II.   BACKGROUND

**A.   Factual Background**

On July 17, 2005, a race riot took place at CSP between African-American and Hispanic inmates in facility D. (ECF No. 1. at C3.) On July 21, 2005, Defendant called Plaintiff and three other inmates to the program office. *Id.* at C4. Plaintiff and the three other inmates were "Mac Reps" of facility D.[2] *Id.* at C3. Defendant informed the Mac Reps that they were going to split up into two groups and talk to the inmates in all of the buildings. *Id.* Plaintiff was paired with Defendant and the other three inmates were grouped with Sgt. Zamora. *Id.*

According to Plaintiff, when he and Defendant arrived at Building 1, all of the inmates were locked in their cells. *Id.* at C4-C5. As Plaintiff moved from cell to cell speaking with each inmate, Defendant was in the control tower with the control officer. *Id.* When Plaintiff reached the last African-American cell, Plaintiff alleges Defendant ordered the control tower officer to open four Hispanic cells, at which time eight Hispanics exited their cells and attacked Plaintiff. *Id.* Plaintiff received stitches in his lip and head due to the attack. *Id.*

---

[1] The Court refers to what Plaintiff calls his "continuing pgs," which constitute his "Attached Brief" of supporting facts for this claim. Plaintiff has marked each of the continuing pages with page numbers, 1-9. The Court utilizes Plaintiff's page designation (C1-C9) throughout this Report and Recommendation.

[2] Plaintiff does not define "Mac Reps" in his Complaint. However, Defendant indicates in his Motion to Dismiss (in the First Complaint) "that the term 'Mac Reps' refers to representatives of the Men's Advisory Counsel." Defendant further states, "[a] Men's Advisory Counsel is a body of inmates selected by the general population of inmates to act in an advisory capacity to the Warden, and his or her administrative staff, in matters of common interest and concern to the general inmate population and administration. Cal. Dep't of Corrections Operations Manual, § 53120.1."

1   Plaintiff further claims Defendant ordered Plaintiff to be placed in Administrative
2  Segregation, where Plaintiff was informed he would remain pending transfer to another institution.
3  *Id.* at C6.  Plaintiff was transferred to the Correctional Training Facility in Soledad, California. *Id.* at
4  C7.

5  **B.   Administrative Appeals**

6   Plaintiff followed the administrative appeals process for the first and second formal levels of
7  review.[3] (ECF No. 1. at Exhibit C-1.) First, on August 12, 2005, Plaintiff submitted a CDC 602
8  inmate appeal form (log number CEN-A-05-01339) for the First Level of Review. *Id.* In that appeal,
9  Plaintiff alleged a personal-injury claim against Defendant from the July 2005 prison attack. *Id.*
10 Plaintiff's appeal was denied at the First Level of Review on September 28, 2005. *Id.*

11  Next, on November 9, 2005, Plaintiff submitted a request for Second Level Review of his
12 appeal, claiming his request was the same as the original request. *Id.* On January 10, 2006,
13 Plaintiff's appeal was denied at the Second Level of Review and he was informed that he could
14 appeal to the Director's Level of Review. *Id.*  Plaintiff attempted to appeal this denial at the
15 Director's Level of Review on March 1, 2006, but his appeal was screened out and returned to him
16 because Plaintiff failed to provide the Second-Level Response and his appeal was untimely. (ECF
17 No. 7- 4. at Exhibit C.)

18 **C.   Procedural Background**

19   **1. Plaintiff's First Federal Action ("the First Action")**

20   On June 14, 2006, Plaintiff filed his first civil rights Action against Defendant in the United
21 States District Court of the Southern District of California pursuant to 42 U.S.C. § 1983. (*See*
22 *Johnson v. Darr,* United States District Court case no. 06-CV-1257-JAH (POR), ECF No. 18
23 [Report and Recommendation].) Plaintiff alleged Defendant violated his Fourth, Fifth, Eighth, Ninth
24 and Fourteenth Amendment rights of the United States Constitution and Article 1, section 7,
25 paragraph (a) of the California Constitution. *Id.* at 3.

26   Defendant filed a Motion to Dismiss Plaintiff's First Action on December 4, 2006. *Id.* at 2.

27
28   [3] There is no indication in the pleadings whether Plaintiff sought informal resolution prior to filing an appeal at the First Level of Review.  However, Defendant does not address this stage of the appeal process and argues only that Plaintiff has not exhausted his administrative remedies due to his failure to complete the Third Level of Review.

1  Defendant argued: (1) Plaintiff's complaint be dismissed because Plaintiff failed to exhaust
2  administrative remedies; (2) Plaintiff's state law cause of action be dismissed since he failed to
3  allege he timely filed a government tort claim; (3) Plaintiff's Fourth, Fifth, Ninth, and Fourteenth
4  Amendment claims, and California constitutional claim be dismissed under Federal Rule of Civil
5  Procedure 12(b)(6); and (4) Plaintiff's Fifth and Fourteenth Amendment claims be dismissed since
6  they are subsumed into his Eighth Amendment claim. *Id.* On January 4, 2007, Plaintiff filed an
7  Opposition to Defendant's Motion to Dismiss. *Id.*

8  On August 10, 2007, this Court recommended Defendant's Motion to Dismiss be granted,
9  determining that Plaintiff did not present cognizable claims under the Fourth, Fifth, Ninth, and
10 Fourteenth Amendments. *Id.* at 13.   Plaintiff's sole remaining claim, his Eighth Amendment claim,
11 was barred for failure to exhaust administrative remedies. *See id.* at 13-14. The Honorable John A.
12 Houston adopted this Court's Report and Recommendation in its entirety on December 13, 2007.
13 (*Johnson v. Darr,* United States District Court case no. 06-CV-1257-JAH (POR), ECF No. 21.)

14 **2. Plaintiff's Second Federal Action ("the Second Action")**

15 Plaintiff filed a second Action on January 14, 2008 pursuant to 42 U.S.C. § 1983 against
16 Defendant. (*See Johnson v. Darr*, United States District Court case no. 08-CV-0080-DMS (POR),
17 ECF No. 10 [Report and Recommendation].) Once again, Plaintiff alleged that, while he was
18 incarcerated at CSP, Defendant violated his Eighth Amendment right to be free from cruel and
19 unusual punishment when he allegedly ordered certain cells opened and allowed the inmates of those
20 cells to physically injure Plaintiff. *Id.* at C3-C4. Plaintiff also claimed he attempted to exhaust
21 administrative remedies, but was not allowed to proceed at the Director's Level of Review because
22 he failed to use the proper channels. *Id.* at C6.

23 On July 18, 2008, Defendant filed a Motion to Dismiss. *Id.* at 3. Defendant claimed: (1) the
24 issue of whether Plaintiff exhausted administrative remedies prior to the First Action is barred by
25 collateral estoppel; (2) Plaintiff had failed to exhaust administrative remedies since the dismissal of
26 the First Action and prior to filing of the Second Action; and (3) the Court should dismiss Plaintiff's
27 second Complaint as a "strike" for being frivolous. *Id.* On July 28, 2008, Plaintiff filed a response in
28 Opposition to Defendant's Motion to Dismiss raising the same claims as in his Complaint. *Id.*

Defendant filed a Reply on August 25, 2008. *Id.*

On February 12, 2009, this Court recommended Defendant's Motion to Dismiss be granted with prejudice because Plaintiff failed to exhaust available administrative remedies. *Id.* at 6-11. The Honorable Dana M. Sabraw adopted this Court's Report and Recommendation in its entirety on March 17, 2009. (*Johnson v. Darr*, United States District Court case no. 08-CV-0080-DMS (POR), ECF No. 13.)

### 3. Ninth Circuit Appeal

Plaintiff appealed the district court's judgment dismissing his Second Action. (*See Johnson v. Darr*, United States District Court case no. 08-CV-0080-DMS (POR), ECF No. 26.) On February 16, 2010, the Ninth Circuit affirmed this Court's decision, holding Plaintiff did not complete the prison grievance process prior to filing suit. *Id*. The Court vacated the judgment and remanded for the limited purpose of entering dismissal without prejudice. *Id.*

### D.     Subsequent Administrative Appeals

Plaintiff attempted to remedy the procedural problem after his Second Action was dismissed by the Ninth Circuit. On April 30, 2010, Plaintiff submitted his request for a Director's Level Review of his first inmate appeal (log number CEN-05-01339). (ECF No.1. at Exhibit C-1.) The Inmate Appeals Branch rejected Plaintiff's appeal on June 7, 2010, because it was not filed within 15 working days of receiving a lower-level decision in accordance with California Code of Regulation Title 15 § 3084.6(c)) and for not providing a valid reason for the delay in appealing to the Director's Level of Review. *Id.* at Exhibit C-6. The appeal was cancelled. *Id*.

Shortly after receiving this rejection, on June 17, 2010, Plaintiff submitted a second CDC 602 inmate appeal form (log number IAB-50-21034). In this second appeal (log number IAB-50-21034), Plaintiff requested permission to resubmit his original, August 2005 inmate appeal (log number CEN-05-01339). *Id.* at Exhibit D-1. On July 19, 2010, the Inmate Appeals Branch rejected Plaintiff's appeal (log number IAB-50-21034) because he failed to include the original, cancelled appeal (log number CEN-05-01339) and other supporting documentation. *Id.* at Exhibit C-7.  On October 7, 2010, the Inmate Appeals Branch denied Plaintiff's inmate appeal (log number IAB-50-21034) at the Director's Level.  *Id.* at Exhibit D-3.

**E.      Plaintiff's Third Federal Action ("the Instant Action")**

On November 10, 2010, Plaintiff filed this Action against Defendant pursuant to 42 U.S.C. § 1983. (ECF No. 1.)  Plaintiff again alleges Defendant violated his Eighth Amendment rights by inflicting cruel and unusual punishment during the July 2005 prison attack. *Id*. On April 18, 2011, Defendant filed a Motion to Dismiss. (ECF No. 7.) Defendant seeks dismissal on the following grounds: (1) Plaintiff failed to exhaust the claim that Defendant violated his Eighth Amendment Rights on July 21, 2005; and (2) the Action should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it is time-barred. *Id*.

On April 28, 2011, Plaintiff filed a response in Opposition to Defendant's Motion to Dismiss. (ECF No. 9.)  Defendant filed a Reply on May 19, 2011. (ECF No 10.)

**F.      Defendant's Request for Judicial Notice**

Defendant requests judicial notice of various court documents relating to Plaintiff's administrative appeals record in support of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss. (ECF No. 10.) Specifically, Defendant requests judicial notice of the following court records: (1) *"Johnson v. Darr*, United States District Court case no. 08-CV-0080-DMS (POR), ECF No. 10 [Report and Recommendation];" and (2) "*Johnson v. Darr*, Ninth Cir. case no. 09-55490, ECF No. 15-1 [Memorandum]." *Id.* at 2.[4]

Rule 201(b) of the Federal Rules of Evidence provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, a court may take judicial notice of facts that "only an unreasonable person would insist on disputing." *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) (internal quotations omitted). A court may take judicial notice of court records. Fed. R. Evid. 201(b); *see Bennett v. Medtronic , Inc.,* 285 F.3d 801, 803 n.2 (9th Cir. 2002) (finding a court may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue). Accordingly, Defendant's request for judicial notice is **GRANTED**.

---

[4] Defendant's request for judicial notice is included in footnote 1 of his Reply to Plaintiff's Opposition.

## III.   DISCUSSION

Defendant seeks dismissal of Plaintiff's Action, arguing: (1) Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a); and (2) Plaintiff's claim is time-barred.

**A.   Failure to Exhaust Administrative Remedies**

**1. Legal Standard**

The Ninth Circuit has held "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under Rule 12(b). *See Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (finding a non-enumerated motion under Rule 12(b) to be "the proper pretrial motion for establishing nonexhaustion" of administrative remedies under 42 U.S.C. § 1997e(a)).[5] Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. *Wyatt*, 315 F.3d at 1119 (same); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (finding "[T]here can be no 'absence of exhaustion' unless some relief remains 'available,'" therefore, "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process, or through awaiting the results of the relief already granted as a result of that process."). However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120 (citing *Ritza*, 837 F.2d at 369).

Before the Prison Litigation Reform Act ("PLRA") was enacted on April 26, 1996, prisoners pursuing civil rights claims under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit in federal court. *See Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 516 (1982). However, the PLRA amended 42 U.S.C. § 1997e(a) to provide, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail,

---

[5] In so finding, the Ninth Circuit also made clear that unlike a motion for summary judgment, "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Wyatt*, 315 F.3d at 1119 (citation omitted). Thus, if the Court finds that the prisoner has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* (citing *Ritza*, 837 F.2d at 368 & n.3).

1 prison or other correctional facility until such administrative remedies as are available are
2 exhausted." 42 U.S.C. § 1997e(a). Once a case is within the discretion of the district court,
3 "exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532
4 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and
5 opportunity to address complaints internally before allowing the initiation of a federal case, *id.* at
6 525-26, and to encompass inmate suits about both general circumstances and particular episodes of
7 prison life--including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available'
8 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of
9 the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741
10 (2001);[6] *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that
11 prisoner's civil rights action must be dismissed without prejudice unless the prisoner exhausted
12 available administrative remedies before he filed suit, even if he fully exhausts while the suit is
13 pending).

14     The prisoner must also comply with the state's "critical procedural rules" governing its
15 administrative grievance or appeals process in order to "properly exhaust." *See Woodford v. Ngo*,
16 584 U.S. 81, 95 (2006). "[Proper exhaustion] means ... a prisoner must complete the administrative
17 review process in accordance with the applicable procedural rules ... as a precondition to bring[ing]
18 suit in federal court." *Id*. at 88. In *Woodford*, the Supreme Court held that a California prisoner
19 whose grievances were rejected all the way up to the third or "Director's Level" of review based on
20 his failure to comply with the California Code of Regulations Title 15 § 3084.5's 15-day time limit
21 for submitting CDC 602 appeals, did not "properly exhaust" and therefore, his claims were subject
22 to dismissal pursuant to 42 U.S.C. § 1997e(a). *Id.* at 92-103; *cf. Jones v. Stewart*, 457 F. Supp. 2d

---

[6] In *Booth*, the Supreme Court resolved a split among the Circuits as to whether a state prison grievance procedure which is incapable of providing money damages is "available" under section 1997e(a) and therefore must be exhausted before the prisoner files federal suit under 42 U.S.C. § 1983 seeking those damages. Looking both to the plain language of the statute and to the legislative history behind the PLRA, the Court held the exhaustion of "available" administrative remedies under § 1997e(a) is required in prison condition cases so long as the "prison administrative process [. . .] could provide some sort of relief on the complaint stated" regardless of whether that process can provide "the remedial action [the] inmate demands." *Booth*, 532 U.S. at 734, 736. In other words, no matter the specific "form of relief sought and offered through administrative avenues," the prisoner must exhaust his claims through the existing administrative processes, even if he seeks money damages which are not authorized, so long as those procedures have the "authority to provide any relief" or permit prison officials to take "some action in response to the complaint." *Id.* at 736, 741 nn. 4, 6.

1131, 1134 (D. Nev. 2006) (reading *Woodford* to set forth two tests for proper exhaustion: a "merits test" whereby the prisoner's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and a "compliance test" whereby the prisoner must comply with all "critical procedural rules," including agency deadlines. If a plaintiff prisoner meets either test, a court will find proper exhaustion. If a defendant can show that the plaintiff failed to meet both the merits and compliance tests, a motion to dismiss for failure to exhaust administrative remedies will be granted).

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." *See* CAL. CODE. REGS. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Brown*, 422 F.3d 926, 929-30 (9th Cir. 2005); *see also Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A decision from the Director's Level of review is "not appealable and concludes the inmate's or parolee's departmental administrative remedy," *Brown*, 422 F.3d at 930 n.2, and, thus, has been found sufficient to satisfy § 1997e(a). *See Barry*, 985 F. Supp. at 1237-38.

**2. Discussion**

Defendant asserts Plaintiff's claim should be dismissed because Plaintiff did not exhaust available administrative remedies through the Director's Level of Review before filing suit, and because Plaintiff failed to correct any deficiencies concerning the exhaustion of his administrative record. (ECF No. 7. at 1.)

Plaintiff acknowledges his first two federal Actions were dismissed because he did not comply with the inmate's administrative appeals process. (ECF No. 1. at Exhibit C-1.) Plaintiff also acknowledges the Ninth Circuit held he did not exhaust administrative remedies through the Director's Level of Review before filing suit. *Id*. at Exhibit D-1. However, Plaintiff argues that after

1  the Second Action was dismissed by the Ninth Circuit, he has since taken steps to exhaust
2  administrative remedies.[7] *Id.* at 6. Specifically, Plaintiff claims he submitted a second appeal (log
3  number IAB-50-21034) through all levels of the inmate administrative appeals process, including
4  the Director's Level of Review. *See id*. at Exhibit C-7, Exhibit D-1, Exhibit D-3. Plaintiff argues
5  that despite his previous default, he has now exhausted his administrative remedies.  (ECF No. 9. at
6  2.) Plaintiff makes this argument based on a letter he received from the Director on October 7, 2010,
7  which states, "this decision exhausts the administrative remedy available to the appellant within
8  CDR." (ECF No. 1. at Exhibit D-3.)

9  Despite Plaintiff's attempts, he did not follow procedural rules of the exhaustion process for
10 his first appeal (log number CEN-05-01339). In *Woodford*, the U.S. Supreme Court stated
11 exhaustion demands compliance with "critical procedural rules." 548 U.S. at 90-91.  Per the
12 California Code of Regulations Title 15 section 3084.6(c)), "An appellant must submit [an] appeal
13 within 15 working days of the event or decision being appealed, or of receiving an unacceptable
14 lower level appeal decision." Plaintiff received a denial at the Second Level of Review on January
15 10, 2006.  (ECF No. 1. at Exhibit C-4.) However, Plaintiff submitted  his appeal for a Director's
16 Level review approximately three months later. *See id.* As a result, his appeal was screened out. *Id.*
17 Plaintiff, therefore, did not "properly exhaust" his administrative remedies for the first inmate appeal
18 (log number CEN-05-1339) as his grievance was rejected at the Director's Level of review based on
19 his failure to comply with requirements of the administrative appeals process. *Woodford*, 548 U.S. at
20 92-103.

21 Although Plaintiff did not comply with the deadlines for filing grievances for his first appeal
22 (log number CEN-05-01339), Plaintiff properly exhausted his claim against Defendant in his second
23 appeal (log number IAB-50-21034). Plaintiff's failure to comply with the administrative appeals
24 procedures in his first appeal (log number CEN-05-1339) may be excused because Plaintiff, in his
25 second appeal (log number IAB-50-21034), provided the prison with information to reach the merits

---

28  [7] Plaintiff included documentation of his administrative appeals process in his Complaint. The documents are included in Exhibits B, C, and D of the Complaint.

of his claim.[8] *Jones*, 457 F. Supp. 2d at 1134; *Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir. 2009) (proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue[]"). The Court in *Jones v. Stewart* held that if a prisoner plaintiff fails to comply with critical procedural rules, a court may still be able to find proper exhaustion if a plaintiff meets a "merits test." *Id.* (reading *Woodford* to set forth two independent tests for proper exhaustion: a "merits test" and a "compliance test").

A prisoner meets the merits test if his administrative appeal provides enough details so as to give the prison authorities notice of the incident. *Id.* The Supreme Court held, in *Jones v. Bock*, 549 U.S. 199 (2007), that the level of detail necessary in a grievance is defined by the prison's requirements and not the PLRA.[9] *Id.* at 217-18. The Court further held that the main purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Compliance with prison exhaustion procedures, therefore, is all that is required by the PLRA to "properly exhaust." *Id.* at 522-23.

Under California law, a prison inmate must follow the administrative exhaustion procedures set forth in sections 3084.1-3084.7 of Title 15 of the California Code of Regulations. CAL. CODE. REGS. tit.15 §§ 3084.1-3084.7. Section 3084.1 allows inmates to "appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." *Id.* at § 3084.1(a). As explained above, this requires a prisoner to proceed through four levels, from informal resolution to the Director's level review. *Id.* at §§ 3084.1-3084.7. An inmate submits his grievance on a CDC 602 Form, which instructs the inmate to "describe problem." *Id*. Neither the grievance form nor the California Code of Regulations contain any instructions requiring an inmate to identify the individuals involved with the claim, or instruct the inmate to describe the problem in any particular level of detail. Although California does not require its

---

[8] Plaintiff included a copy of his CDC 602 form for his second appeal (log number IAB-50-21034) in his Complaint. (ECF No. 1. at Exhibit D-1.)

[9] The level of detail necessary in a grievance to comply with the administrative appeals procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

1 prisoners to name involved individuals in a grievance, the Supreme Court still requires that a
2 grievance contain sufficient information such that a prison can "address complaints about the
3 program it administers before being subjected to suit . . . ." *Jones*, 549 U.S. at 219; *Griffin*, 557 F.3d
4 at 1120 (finding that when a prison's grievance procedures are silent or incomplete as to factual
5 specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is
6 sought").

In order for this Court to find that Plaintiff met the merits test, Plaintiff needed to include enough details of the alleged July 2005 prison attack in his second CDC 602 form (log number IAB-50-21034) so as to give the prison authorities notice of the claim against Defendant. *Id.* In this case, Plaintiff afforded the prison an opportunity to address the inmate complaint internally.[10] *Griffin*, 557 F.3d at 1120 (finding that the purpose of providing the prison with information is to alert the prison of a problem and facilitate its resolution).

Plaintiff, in his second CDC 602 form (log number IAB-50-21034), provided prison authorities with notice of the claim against Defendant by including and referencing his original appeal log number (CEN-05-01339) and stating ".....petitioner need[s] this office to hear his *staff complaint* in order to proceed back in the Federal Court to insure his due process rights are not continually violated by the state C.D.C.R. system." (ECF No. 1. at Exhibit D-1.) Including the original appeal log number and stating that his claim involves a staff complaint is sufficient to put the prison authorities on notice because staff complaints require a detailed level of review by prison authorities. Inmate appeals alleging staff misconduct are reviewed by an official at least at the level of Chief Deputy Warden, Deputy Regional Parole Administrator or equivalent to determine if the appeal really concerns staff misconduct.[11] CAL. CODE. REGS. tit.15 §§ 3084(g), 3084.9(i)(1). Similar to courts liberally construing a pro se's pleadings, the prison authorities should be able to construe the description Plaintiff provided in his CDC 602 form as a request to resolve his Eighth

---

[10] The purpose of the PLRA's exhaustion requirement, 42 U.S.C.S. § 1997e(a), is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Brown*, 422 F.3d at 936-37.

[11] Staff misconduct includes harassment or brutality or blatant failure to follow rules. If the appeal is accepted as a staff misconduct appeal, the officials will decide whether to refer the case to CDCR Office of Internal Affairs (OIA) for an investigation or whether the institution officials will conduct a confidential inquiry on their own. CAL. CODE. REGS. tit.15 §§ 3084.9(i)(3).)

1  Amendment claim against Defendant.[12] *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d

2  621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

3  Therefore, although Plaintiff did not mention Defendant by name or provide every fact related to the

4  incident, Plaintiff provided sufficient information on his CDC 602 form (log number IAB-50-21034)

5  such that a prison may address the staff complaint and facilitate a resolution. *See Griffin*, 557 F.3d at

6  1120 (finding that proper exhaustion requires only a minimum level of information, not the optimal

7  level of information necessary to prepare the prison for potential litigation); *see also Jones*, 457 F.

8  Supp. 2d at 1134-36.

9        Moreover, a review of Defendant's Motion to Dismiss and supporting documents also

10 indicate that Plaintiff provided the prison authorities with notice of the claim against Defendant.

11 First, Defendant includes a declaration from D. Foston, Chief of Inmate Appeals Branch, in support

12 of his Motion to Dismiss. (ECF No.7-4. at 1.) Prison authorities were put on notice of Plaintiff's

13 Eighth Amendment complaint against Defendant as Foston explained:

14 The California Attorney General's Office requested that my office search its records to ascertain if inmate Matthew L. Johnson, CDCR No. D-33369 filed any inmate appeal against Captain Darr,
15 regarding allegations that Captain Darr set him up to be assaulted on July 21, 2005, by ordering eight Hispanic inmates out of their cells to take showers while inmate Johnson was going door to
16 door, speaking with Black inmates regarding a racial riot between Black and Hispanic inmates that occurred on July 17, 2005...On July 28, 2010, this office received Appeal Log No. IAB-50-21034
17 requesting permission to resubmit the original staff complaint (Appeal Log No. CEN-05-01339). On October, 7, 2010, the appeal was denied at the Third Level of Review.
18
19 (ECF No. 7-4 at 3.) Based on this declaration, it is clear that Plaintiff's second appeal (log number

20 IAB-50-21034) was associated with the Plaintiff's claim against Defendant. *Id.* Defendant also

21 included a copy of Plaintiff's October 2010 Director's Level response. (ECF No. 7-4. at Exhibit A.)

22 In denying Plaintiff's request to resubmit his original appeal, the Director stated:

23 A determination has been made at the Third Level of Review, that appeal Log No. CEN 05-01339 was properly cancelled. Although the appellant argues that the five year delay was due to the matter
    pending in court, the evidence establishes that he had allowed time constraints to expire prior to
24 going to court, which is why he had no Third Level Response at the time he took the matter to court. Therefore, consideration of any subsequent effort to obtain a late review is in appropriate.
25
26 *Id.* Based on the information Plaintiff provided, prison authorities had notice of Plaintiff's claim

27 against Defendant and had full opportunity to consider and investigate Plaintiff's claim before this

28       [12] Plaintiff's complaint was characterized as a staff complaint in the Inmate Appeals Tracking System. (ECF No. 7-4. at Exhibit F.)

1 suit was filed. *Brown*, 422 F.3d at 940.

2 Accordingly, Plaintiff met the merits test and properly exhausted his administrative
3 remedies. *See id.* at 936-37; *Woodford*, 548 U.S. at 88, 95. Defendant, thus, fails to demonstrate that
4 Plaintiff did not exhaust all "available" administrative remedies. *See Jones*, 549 U.S. at 212; *Brown*,
5 422 F.3d at 936-37. Based thereon, the Court recommends Defendant's Motion to Dismiss be
6 **DENIED** as to Defendant's claim that Plaintiff failed to exhaust administrative remedies.

**B.      Statute of Limitations**

Defendant also argues Plaintiff's Complaint should be dismissed as Plaintiff failed to bring it within four years of the prison attack. (ECF No. 7.) Plaintiff contends that his claim is not time-barred. (ECF No. 1. at Exhibit D-1, ECF No. 9. at 2.)

**1. Legal Standard**

Because section 1983 contains no specific statute of limitation, federal courts apply the statute of limitations of the state in which the claim arises. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)[13]; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004), *cert. denied sub nom. Kempton v. Maldonado*, 125 S. Ct. 1725 (2005); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Until December 31, 2002, the applicable statute of limitations for a personal injury claim in California was one year. *See Jones*, 393 F.3d at 927 (citing Cal. Civ. Proc. Code. § 340(3) (West 2002)). Effective January 1, 2003, the applicable California statute of limitations was extended to two years. *Id.* (citing Cal. Civ. Proc. Code. § 335.1 (West 2004)).

Although a federal court looks to the forum state to determine the applicable statute of limitations, federal law determines when a civil-rights claim accrues. *Elliott v. City of Union City*, 25 F.3d 800, 803 (9th Cir. 1994). Under federal law, the statute of limitations begins to run, or accrues, when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914; *Wilson*, 471 U.S. at 267; *see also Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). The cause of

---

[13] *Wilson* was later overruled only as to claims brought under the Securities Exchange Act of 1934, which is not applicable here.

action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384 , 391 (2007).[14]

Federal courts also look to state law in order to determine whether it provides a basis for tolling the statute of limitations. *Wallace,* 127 S.Ct. At 1098-99; *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989); *Jones*, 393 F.3d at 927 (in actions where the federal court borrows the state statute of limitation, the federal court should also borrow all applicable provisions for tolling the limitations period in state law). The statute of limitations may also be tolled for a period not to exceed two years for persons imprisoned for a term less than life. Cal. Code Civ. P. § 352.1(a).

Further, California law provides for equitable tolling of the statue of limitations while exhaustion occurs, regardless of whether or not exhaustion is a prerequisite to filing suit.[15] *Donoghue v. County of Orange*, 848 F.2d 926, 930-31 (9th Cir. 1988); *Addison v. State of California*, 21 Cal.3d 313, 318 (1978). In addition, the Ninth Circuit has specifically held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process" required by 42 U.S.C § 1997e(a). *Brown*, 422 F.3d at 943.

Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) the defendants must not be prejudiced by the application of equitable tolling. *Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1336 (Cal. Ct. App. 1994); *Addison*, 21 Cal.3d at 316-17; *Fink*, 192 F.3d at 916 (quoting *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988)). Plaintiff has the burden of showing that equitable tolling applies. *Hinton v. Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993); *U.S. v. Marolf*, 173 F.3d 1213, 1218 n.3, (9th Cir. 1999).

Equitable tolling under California law "is a judge-made doctrine 'which operates

---

[14] The Court in *Wallace* held that if a cause of action were to accrue when the extent of the injury was known, "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute in repose in the sole hands of the party seeking relief." *Id.*

[15] The effect of equitable tolling is that "the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval...is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." *Johnson v. Riverside Healthcare Systems*, *LP*, 516 F.3d 759, 770 n.3 (9th Cir. 2008)

independently of the literal wording of Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003). The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Jones*, 393 F.3d at 928 (quoting *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001)). Thus, California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy*, 31 Cal.4th at 371. Application of California's equitable tolling doctrine, therefore, "requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute." *Id*. at 372. On the one side of the balance is the generic public policy interest in ensuring prompt resolution of legal claims.[16] *Id.* (quoting *Addison*, 21 Cal. 3d at 321). On the other side, a plaintiff should be able to find a way around a statute if an obstacle, unanticipated by the legislature, prevents a plaintiff from pursing his claim. *See id.*, at 372.

Where a defendant moves to dismiss a complaint on the basis that the statute of limitations has run, the court may only grant such a motion if the allegations in the complaint, construed with the required liberality, would not permit the plaintiff to prove the statute was tolled. *See Supermail Cargo Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Wilson*, 471 U.S. at 276). In this way, a motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo Inc.*, 68 F.3d at 1206-07 (citing *Jablon*, 614 F.2d at 682); *see generally Conley v. Gibson*, 355 U.S. 41 (1957) (complaint cannot be dismissed pursuant to FED.R.CIV.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts" that would establish the timeliness of the claim).

---

[16] Fairness to the defendant requires that a case be brought when memories have not been affected by time, when all pertinent witnesses can still be called, and when physical evidence has not been destroyed or dispersed. In addition to these evidentiary concerns, the public has an interest in avoiding the cultivation of stale grievances and grudges. Statutes of limitations are not legalistic gimmicks but embody the experience of Anglo-American law that it is sound public policy to set a specific time within which a given legal action may be brought. *Jones,* 393 F.3d at 927-28.

**2. Discussion**

Here, the statute of limitations on Plaintiff's claim began to accrue on July 21, 2005, when he was attacked. *Maldonado*, 370 F.3d at 955 (finding the statute of limitations begins to run, or accrues, when plaintiff knows or has reason to know of the act providing the basis for his injury has occurred). The statute of limitations was tolled for two years until July 21, 2007, because of Plaintiff's incarceration. Cal. Code Civ. P. § 352.1(a). Because the statute of limitations in California is two years, the limitations period extended until July 21, 2009. Cal. Civ. Proc. Code. § 335.1. Unless equitable tolling applies, Plaintiff's claim is time-barred.

Although Plaintiff does not explicitly assert that he is entitled to equitable tolling, Plaintiff's pleadings could be construed to indicate that he is making an argument for an extension of the statute of limitations. *See Karim-Panahi*, 839 F.2d at 623, (the Court's duty to liberally construe a pro se's pleadings is"particularly important in civil rights cases"). Plaintiff establishes in his Complaint and Opposition that the delay in filing the instant Action stemmed from his pursuit of administrative remedies, including the Second Action pending in Court.[17] (ECF No. 9. at 3-4; ECF No. 1 at C-8, Exhibit C-1.) *See Ferdik*, 963 F.2d at 1261; *Hinton*, 5 F.3d at 395 (finding that Plaintiff has the burden to establish entitlement to equitable tolling).

In construing Plaintiff's pleadings liberally, Plaintiff establishes his entitlement to equitable tolling as he met the three conditions required to toll a statute of limitations. *Hull*, 28 Cal.App.4th at 1336. First, as described above, Plaintiff diligently pursued his claim against Defendant as he actively attempted to exhaust his administrative remedies and resolve his claim in court.[18] *Id.*

---

[17] In his Complaint, Plaintiff claims that he complied with this Court's order, which was to exhaust all administrative remedies. (ECF No. 1.) Plaintiff also included a copy of his CDC 602 appeal form (log number IAB-50-21034) in which he contends that the delay was because his Action, case number 08cv0080-DMS(POR), was in federal court. (ECF No. 1. at Exhibit C-1.) Plaintiff also states that as a result of the Ninth Circuit decision, Plaintiff has the opportunity to go back and exhaust his administrative remedies. *Id.*

[18] The following information is taken from the Background section of this Report and Recommendation, pages 2-6. Shortly after Plaintiff's first inmate appeal was screened out in March 2006, Plaintiff filed his first Complaint in this Court in June 2006. After Plaintiff's first Complaint was dismissed on December 13, 2007, Plaintiff filed a second Complaint in federal court on January 14, 2008. After Plaintiff's Complaint was dismissed by the district court, he appealed the Complaint. Upon receiving the Ninth Circuit's decision on February 16, 2010, Plaintiff took steps to exhaust his administrative remedies. On April 30, 2010, he attempted to exhaust his original appeal (log number CEN-05-01339) but the appeal was cancelled on June 7, 2010. Shortly thereafter, on June 17, 2010, Plaintiff submitted a new CDC 602 inmate appeal form (log number IAB-50-21034). Plaintiff exhausted his administrative remedies through the Director's Level of Review on October 7, 2010.

1  Second, Plaintiff's situation is the product of forces beyond his control as he has been involved in
2  the mandatory exhaustion process. *Id.* Third, Defendant is not prejudiced by the application of
3  equitable tolling as he had sufficient notice or warning of Plaintiff's first claim. *See id.*; *see also*
4  *Cervantes*, 5 F.3d at 1275 (finding that the doctrine of equitable tolling focuses on the effect of the
5  prior claim in warning the defendant in the subsequent claim of the need to prepare a defense). In
6  addition to naming the same Defendant (Darr) and alleging the same facts as in the first two Actions,
7  Plaintiff put the prison officials on notice of the claim when he submitted his second CDC 602 form
8  (log number IAB-50-21034), as described above. (ECF No.1. at Exhibit D-1.) The pendency of the
9  Second Action and his involvement with the exhaustion process, therefore, tolled the statute of
10 limitations under *Hull*. *Hull*, 28 Cal.App.4th at 1336.

11 Moreover, the statute of limitations should be extended to ensure fundamental practicality
12 and fairness. *Addison*, 21 Cal. 3d at 316-17, 321. It is in the public's interest to promptly resolve
13 legal claims. *See id.* However, the injustice to Plaintiff by the bar of his claim outweighs the
14 injustice to Defendant because Defendant would not suffer prejudice. *Jones,* 393 F.3d at 928
15 (quoting *Daviton*, 241 F.3d at 1137) (finding that the purpose of California's equitable tolling
16 doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith
17 litigant from having a day in court").

18 Therefore, here, in addition to the four year limitation period,[19] the statute of limitations is
19 equitably tolled for an additional period of about three years (thirty-eight months) while Plaintiff
20 was involved in the mandatory exhaustion process. *Brown*, 422 F.3d at 943 (finding that the
21 applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion
22 process required by 42 U.S.C § 1997e(a)). *Brown* may be read broadly to include all of Plaintiff's
23 attempts to exhaust his claim against Defendant, including his cancelled first appeal (log number
24 CEN-05-01339), the time he spent waiting for decisions on his Second Action (08cv0080-
25 DMS(POR)), and his second appeal (log number IAB-50-21034). *Id.* Plaintiff was engaged in the

---

One month later, on November 10, 2010, Plaintiff filed the instant complaint. Plaintiff's conduct, therefore, demonstrates that he diligently pursued his claim. *Hull,* 28 Cal.App.4th at 1335.

[19] The four year period includes two years statute of limitations and two years statutory tolling under Cal. Code Civ. P. § 352.1(a), as described in the previous paragraph.

mandatory exhaustion process during the following periods:[20]

- <u>August 2005 - March 2006</u> (*7 Months*) - While Plaintiff was attempting to exhaust CDC Log No. CEN-05-01339 from August 12, 2005, (when Plaintiff filed his CDC 602 inmate appeal form) until March 1, 2006 (when Plaintiff's appeal was screened out).

- <u>January 2008 - March 2009</u> (*15 Months*) - While Plaintiff's Second Action (08cv0080-DMS(POR)) was pending in district court from January 12, 2008, until March 17, 2009.

- <u>April 2009 - February 2010</u> (*10 Months*) - While Plaintiff was waiting for a decision from the Ninth Circuit from April 1, 2009, until February 16, 2010.

- <u>May 2010 - June 2010</u> (*1 Month*) - While Plaintiff made a second attempt at exhausting CDC Log No. CEN-05-01339 from April 30, 2010 (when Plaintiff submitted a CDC 602 form to the Director's Level of Review) until June 7, 2010, (when the Inmate Appeals Branch cancelled Plaintiff's appeal).

- <u>June 2010 - October 2010</u> (*5 Months*) - While Plaintiff exhausted CDC 602 Log No. IAB-50-21034 from June 17, 2010, (when Plaintiff filed his CDC 602 inmate appeal form) until October 7, 2010, (when Plaintiff received the Director's Level decision).

(ECF No. 1 at Exhibit C-1, Exhibit D-1, Exhibit D-3.)

As a consequence, the tolled interval of about three years is added to the end of the limitations period of July 21, 2009,[21] thus extending the deadline for suit by the entire length of time during which Plaintiff was engaged in the exhaustion process. *Johnson*, 516 F.3d at 770 n.3. Accordingly, because the end of the limitations period is July 21, 2012, and Plaintiff filed the instant Action on November 10, 2010, Plaintiff is well within the statute of limitations. Based thereon, the Court recommends that Defendants' Motion to Dismiss be **DENIED**.

### V.   CONCLUSION

For all of the above reasons, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **DENIED**.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **July 29, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned

---

[20] The limitations period stopped running during each of these time periods. *Johnson*, 516 F.3d at 770 n.3.

[21] The statute of limitations on Plaintiff's claim accrued on July 21, 2005, when he was attacked. The statute of limitations was tolled for two years until July 21, 2007, because of Plaintiff's incarceration. Cal. Code Civ. P. § 352.1(a). The limitations period is extended by two years, until July 21, 2009. Cal. Civ. Proc. Code. § 335.1.

1 | "Objections to Report and Recommendation."

2 | **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 10, 2011**. The parties are advised that failure to file objections with in the specified time may waive the right to raise those objections on appeal of the Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 7, 2011

_____
LOUISA S PORTER
United States Magistrate Judge

cc: The Honorable William Q. Hayes
all parties